OREGON NATURAL DESERT ASSOCIATION, Rest the West, Oregon Natural Resources Council, Oregon Wildlife Federation, the Pacific Rivers Council, Portland Audubon Society, Northwest Environmental Defense Center, and Trout Unlimited, Plaintiffs,

and

The Confederated Tribes of the Warm Springs Reservation of Oregon, Plaintiff–Intervenor,

v.

Jack Ward THOMAS, in his official capacity as Chief of the United States Forest Service, Defendant.

EASTERN OREGON PUBLIC LAND COALITION and Robert Burril, Defendants–Intervenors and Third–Party Plaintiffs,

Grant County, a political subdivision of the State of Oregon, Defendant–Intervenor and Third–Party Plaintiff,

v.

Jack Ward THOMAS, in his official capacity as Chief of the United States Forest Service, Third–Party Defendant.

Civil No. 94–522–HA.

Michael Axline, Stuart Sugarman, of Counsel, Eugene, OR, for Plaintiffs.

Howard G. Arnett, Paul Dewey, of Counsel, Karnopp, Petersen, Noteboom, Hubel, Hansen & Arnett, Bend, OR, for Plaintiff–Intervenor.

Lois J. Schiffer, Assistant Attorney General, Environmental and Natural Resources Division, Steven E. Rusak, Trial Attorney, Environmental Defense Section, United States Department of Justice, Washington, DC, Kristine Olson, United States Attorney, Jonathan Ray, Assistant United States Attorney, Portland, OR, Jocelyn B. Somers, Special Assistant United States Attorney, of Counsel, Portland, OR, for Defendant.

Daniel E. O'Leary, Michael J. Uda, Davis Wright Tremaine, Portland, OR, for Defendants–Intervenors Eastern Oregon Public Land Coalition and Robert Burril.

Ronald S. Yockim, Cegavske Johnston Yockim & Associates, Roseburg, OR, for Defendant–Intervenor Grant County.

HAGGERTY, District Judge:

Plaintiffs, are a collection of several environmental groups, and plaintiff-intervenor, the Confederated Tribes of the Warm Springs Reservation of Oregon, bring this action against the United States Forest Service ("USFS") under the citizen suit provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, as well as under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Plaintiffs seek a declaratory judgment establishing that applicants for federal

grazing permits receive, as a necessary precondition to the issuance of that permit, certification from the state in which the grazing is to occur that the grazing activity will not adversely impact state water quality standards.

The matters before the court are the plaintiffs' and plaintiff-intervenor's motions for declaratory and injunctive relief and summary judgment; the USFS motions for judgment on the pleadings or in the alternative for summary judgment; and the motion to dismiss or for summary judgment from the defendant-intervenors, Grant County and Robert Burril.

## BACKGROUND

Section 401 of the Clean Water Act requires state certification for any applicant applying for a Federal license or permit for any activity that may result in a discharge. In July 1993, the USFS issued Term Grazing Permit #01607 for the Camp Creek allotment to Robert Burril, enabling Burril to graze his cattle on federal lands in the Malheur National Forest in Oregon. The grazing permit allotment straddles the Middle Fork of the John Day River and Camp Creek, a tributary of the John Day River. The permit was issued without § 401 certification.

Plaintiffs and plaintiff-intervenor filed a civil action against the USFS under the CWA citizen suit provision, 33 U.S.C. § 1365, and § 702 of the Administrative Procedures Act. Plaintiffs seek a declaration that the USFS is violating § 401(a) of the CWA by issuing grazing permits without requiring the permittee to first obtain certification from the state of Oregon establishing that the grazing will not violate state water quality standards. Plaintiffs and plaintiff-intervenor also seek an order directing the USFS to suspend the grazing permit pending certification.

On March 3, 1994, plaintiffs submitted notice of intent to file a citizen suit under the CWA against the USFS. On December 15, 1994, the USFS filed a motion for judgment on the pleadings or in the alternative for summary judgment, raising the issue of whether the diffuse runoff of pollutants from grazing constitutes a "discharge" in § 401. The plaintiffs and plaintiff-intervenors also seek summary judgment.

## JURISDICTIONAL STANDARDS AND ARGUMENTS

■ "[W]here a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. In such a situation, the district court is: 'free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983) (internal quotation omitted)).

■ "Because the court's power to hear the case is at stake, it is not limited to considering the allegations of the complaint. It may consider *extrinsic evidence;* and if the evidence is disputed, it may weigh the evidence and *determine* the facts in order to satisfy itself as to its power to hear the case...." Schwarzer, Tashima, Wagstaffe, *Federal Civil Procedure Before Trial*, RUTTER GROUP PRACTICE GUIDE § 9:85 (1992) (emphasis in original) (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987); *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170, 176 (5th Cir.1990)). Where the question of jurisdiction is dependent on the resolution of factual issues going to the merits of the action, however, a court may not resolve genuinely disputed facts. *Augustine* at 1077; *See* Schwarzer § 9:85.1.

As a preliminary matter, the court must address several procedural challenges raised by defendants. Defendants have moved to dismiss this action on the alternative grounds that plaintiffs and plaintiff-intervenor lack standing, the right to judicial review, and/or jurisdiction.

### 1. Standing

The standing requirements are described in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), in which the Supreme Court provided a three-part test:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized ... and (b) "actual or immi-

nent," not "conjectural or hypothetical;" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61, 112 S.Ct. at 2136 (internal citations omitted).

■ The standing analysis is affected by whether the plaintiff is the object of an government's action or inaction. *Id.* at 562–63, 112 S.Ct. at 2137. If the plaintiff is an object of governmental action, then there is little question of an injury, and that a judgment will redress it. *Id.* The government's unlawful regulation, or lack of regulation, of another entity requires more to establish standing. *Id.*

■ The defendant-intervenor argues that plaintiffs do not satisfy the standing requirements. Defendant-intervenor claims (1) that there is no injury because there is no evidence that any member of the plaintiff environmental groups lives near Camp Creek, or that the harm allegedly suffered by them is connected to grazing practices; (2) that there is no traceability because there is no connection between the issuance of the permit without state certification and deleterious grazing practices; and (3) that there is no redressability because ordering state certification will not guarantee that water quality impacts will be prevented.

The defendant-intervenor asserts similar arguments with regard to the Warm Springs Tribe. They claim that (1) the Tribe has not shown that the treaty rights apply to Camp Creek, (2) there is no connection between issuance of grazing permit without state certification and harm to the treaty rights, and (3) there is no evidence that the harm will cease if the Forest Service orders state certification.

The defendant-intervenor's argument fails. Plaintiffs and plaintiff-intervenor satisfy the *Lujan* standing test, having established an injury in fact because plaintiffs live and recreate in the area of the challenged action. *Salmon River Concerned Citizens v. Robert-*

*son,* 32 F.3d 1346, 1345–55 (9th Cir.1994) (holding that a procedural challenge does not mean plaintiffs' injury is procedural if plaintiff lives or recreates in the area). Plaintiffs have also adequately established traceability, in light of the Forest Service's admission that cattle grazing contributes to water pollution, and the showing that pollution in Camp Creek is related to cattle grazing. The redressability requirement is also satisfied, since plaintiffs need not establish that following the required procedures will lead to a different result. *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1518 (9th Cir. 1992) (explaining that the "ultimate outcome following proper procedures is not in question"). Rather, plaintiffs need only show that a procedural requirement was not followed.

■ The Tribe also has standing. The Tribe has treaty rights in the John Day River Basin, and these rights are injured by the alleged violations.

2. Judicial Review

■ The defendants next argue that plaintiffs can not sue under the CWA citizen suit provision, CWA § 505, 33 U.S.C. § 1365 (1994), to enforce water quality standards. Their argument is based on *Oregon Natural Resources Council v. U.S. Forest Service,* 834 F.2d 842, 849 (9th Cir.1987), which held that citizens could sue under § 505 for violations of effluent limitations, but that such a right was applicable only to point sources and did not extend to water quality standards.

In *Northwest Environmental Advocates v. City of Portland,* 56 F.3d 979 (9th Cir.1995), however, the Ninth Circuit held that citizens can enforce permit conditions through § 505 for effluent *and* water quality violations. *Id.* at 986–987. Accordingly, plaintiffs can seek enforcement of § 401 certification violations under § 505 for water quality standards.

■ The defendant-intervenors also assert that Burril, the permit applicant, did not receive adequate notice from plaintiff-intervenors, as is purportedly required under § 505. The defendants rely upon *Hallstrom v. Tillamook County,* 493 U.S. 20, 23, 110 S.Ct. 304, 307, 107 L.Ed.2d 237 (1989), in

which the Supreme Court held that the plaintiffs failed to comply with certain citizen suit notice requirements, necessitating dismissal of the suit.

*Hallstrom* involved one plaintiff who failed to give notice to the defendants. In this case, plaintiffs gave notice to Burril, while the plaintiff-intervenors did not. In *Lykins v. Westinghouse Elec. Corp.*, 27 E.R.C. 1590, 1599, 1988 WL 114522 (E.D.Ky.1988), the court held that the an intervenor did not have to provide separate notice under the CWA. Similarly, in *Environmental Defense Fund v. Tidwell*, 837 F.Supp. 1344, 1352–53 (E.D.N.C.1992), the court held that notice from two of five environmental organizations was sufficient under the CWA. Accordingly, the court concludes that plaintiffs provided adequate notice.

### 3. Jurisdiction

■ The defendant-intervenors also argue that the Tribe did not properly allege jurisdiction because it failed to allege that the United States could have brought this suit as a trustee. This assertion is meritless. Under 28 U.S.C. § 1362, the Tribe can bring all civil claims arising under the Constitution, federal laws, or treaties into district court.

## SUMMARY JUDGMENT STANDARDS AND ARGUMENTS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Elec. Serv., Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

■ Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *T.W. Electrical*, 809 F.2d at 630.

## ANALYSIS

■ The question presented is whether § 401 of the Clean Water Act, 33 U.S.C. § 1341(a)(1) applies to impacts resulting from cattle grazing under permit by the USFS. Section 401(a)(1) requires that before a federal permit may be issued for "any activity ... which may result in any discharge into navigable waters," a state certificate must be obtained. 33 U.S.C. § 1341(a)(1). The primary issue is whether the reference to "any discharge into navigable waters" under § 401 is limited to point sources.

"Point source" is defined under the CWA as

> any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include return flows from irrigated agriculture.

33 U.S.C. § 1362(14). The term "discharge," when used without qualification in the CWA, includes a discharge of a pollutant, and a discharge of pollutants. *Id.* at § 1362(16). "Discharge" of a pollutant or pollutants means "any addition of any pollutant to navigable waters from a point source." *Id.* at § 1362(12).

The USFS asserts that the plain meaning of "discharge" is limited to a point source or a nonpoint source with a conveyance. Defendant-intervenors claim that "discharge" is limited to point sources only, interpreting the phrase "without qualification" in the discharge definition as allowing some types of nonpoint source activity to fall within the statutory definition of point source.

These arguments contradict the plain meaning of the term "discharge." The term "including" in the discharge definition permits additional, unstated meanings. *National Wildlife Federation v. Gorsuch*, 693 F.2d 156, 172 (D.C.Cir.1982) (holding that the term "includes" in the CWA allows for additional, unstated meanings); *Exxon Corp. v. Lujan*, 730 F.Supp. 1535, 1545 (D.Wyo.1990) (holding that the word "includes" instead of "means" indicates that what follows is a nonexclusive list that can be enlarged); *Chemehuevi Indian Tribe v. California St. Bd. of Equalization*, 757 F.2d 1047, 1054 (9th Cir. 1985), ("includes" is a term of enlargement, not of limitation) *rev'd on different grounds* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985).

Accordingly, this court concludes that the plain meaning of "discharge" does not restrict the definition to point sources or nonpoint sources with conveyances.

■ Defendants next argue that their interpretation of § 401(a) should receive deference from this court. Defendants assert that the court should defer to the Forest Service's long-standing practice of not requiring state certification for cattle grazing.

■ The Supreme Court addressed the standards for determining the amount of deference an agency should receive for its interpretation of a statute in *Chevron U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the "intent of the Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. When the statute is silent or ambiguous, the court must determine whether the agency's interpretation is grounded in a permissible construction of the statute. *Id.* at 843, 104 S.Ct. at 2782.

■ In interpreting § 401, the Forest Service is not entitled to any agency deference because the EPA, not the Forest Service, administers the CWA. *Baptist Hosp. East. v. Sullivan*, 823 F.Supp. 424, 427 (W.D.Ky.1993) (holding that a precondition to *Chevron* deference is congressional delegation of administrative authority). An agency that interprets a statute other than the one it is entrusted to administer is entitled to no deference. *Hughes Aircraft Co. v. U.S.*, 29 Fed.Cl. 197, 223 (1993); *Wachtel v. Office of Thrift Supervision*, 982 F.2d 581, 585 (D.C.Cir.1993) (holding that deference to an agency interpretation is not appropriate where a statute is administered by more than one agency). Additionally, a *post hoc* rationalization by an agency counsel, when the agency itself has not taken a position prior to litigation, is not entitled to deference. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988). The Forest Service's failure to require § 401 certification for cattle grazing is not entitled to deference by this court.

■ Legislative history is used to ascertain Congress's meaning behind statutory language; where legislative history conflicts, the court must defer to the plain meaning. *United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985). Defendants contend that the 1970 and 1972 amendments support their argument that the "discharge" definition has a limited meaning. Defendants assert that the 1972 amendments illustrate Congress's redirected emphasis from water quality standards to effluent standards. S.Rep. No. 414, 92nd Cong., 1st Sess. 7–8, 69 (1971). This is shown by the lack of references to nonpoint sources in the amendments. *Id.* The amendments focus on Congress's changing emphasis from water quality standards to effluent limitations to control the discharge of pollutants from point sources. *Id.*

Section 401(a) originated as 21(b) under the Water Quality Improvement Act of 1970. The language under this section is identical to the current Act. The 1970 legislative his-

tory reveals that Congress intended to regulate all polluting activities through water quality standards. There was no distinction between point and nonpoint sources in the original Act. Senator Cooper stated that the 1970 amendments "require, without exception, that all Federal activities that have any effect on water quality be conducted so that water quality standards be maintained." 115 CONG.REC. 28970 (1969). The 1970 amendments illustrate the broadness of § 401; the 1972 amendments support this.

Even though nonpoint sources are not mentioned in the 1972 amendments, the court cannot construe that Congress intended to preclude their application to § 401. In *Northwest Environmental Advocates v. City of Portland*, 56 F.3d 979, 986 (9th Cir.1995), the court looked at the 1972 amendments to the CWA and held that "nowhere does Congress evidence an intent to preclude the enforcement of water quality standards that have not been translated into effluent discharge limitations."

Congress's 1972 amendments to the CWA were intended to improve enforcement of pollution from point sources, not supplant the old system. *Id.* The legislative history to the CWA supports the conclusion that § 401 applies to all federally permitted activities that might result in water pollution.

The proposed narrower reading of § 401 is rejected by this court, based on the plain meaning of the word "discharge" as used in § 401, the statutory definition of "discharge," and the legislative history of the CWA. This court holds that § 401 applies to all federally permitted activities that may result in a discharge, including discharges from nonpoint sources.

The parties do not dispute that cattle grazing may .cause water pollution. Plaintiffs' Statement of Material Facts Not in Dispute at ¶ 7. Plaintiffs are not required to prove that cattle grazing on the Camp Creek allotment "will" result in water pollution, only that cattle grazing "may" cause water pollution. *See Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64 (3rd Cir.1990) (in Clean Water Act enforcement action, plaintiffs need only show that offending discharge "may" cause the alleged adverse effects). Plaintiffs offered undisputed evidence that cattle grazing on the Camp Creek allotment, as authorized by permit # 01607, not only "may" result in pollution, but has resulted in pollution of both Camp Creek and the Middle Fork of the John Day River. This court finds that pollution caused by cattle grazing constitutes a "discharge ... into navigable waters" within the meaning of § 401 of the CWA. Therefore, state certification under § 401 was required before the USFS issued a cattle grazing permit on the Camp Creek allotment.

CONCLUSION

For the reasons provided above, plaintiffs' motion (doc. # 99) and plaintiff-intervenor's motion (doc. # 94) for summary judgment are granted. Plaintiffs' request for declaratory judgment that state certification under § 401 of the CWA is required before a cattle grazing permit may be issued is granted. Plaintiffs' request for an injunction prohibiting the USFS from issuing federal cattle grazing permits before the applicant for the permit obtains state certification under § 401 is also granted. All other motions are denied as moot.

IT IS SO ORDERED.