859 F.2d 313
 28 ERC 1560, 18 Envtl. L. Rep. 21,509
 NATIONAL WILDLIFE FEDERATION; Environmental Policy
Institute; North Carolina Wildlife Federation;
North Carolina Fisheries Association,
Inc., Plaintiffs- Appellees,
and
Pungo River Association; Stumpy Point Civic Club; the
Pamlico-Tar River Foundation; the Conservation
Council of North Carolina, Plaintiffs,
v.
Wayne A. HANSON, in his official capacity as Wilmington
Dist. Engineer; John O. Marsh, in his official capacity as
Sect. of U.S. Dept. of Army; William R. Gianelli, in his
official capacity as Asst. Sect. of U.S. Dept. of Army;
Joseph K. Bratton, Lt. Gen., in his off. capacity as Chief
of Engineers; William D. Ruckelshaus, in his official
capacity as Admr. of U.S. Environmental Protection Agency;
Charles R. Jete, in his off. capacity as Regional Admr. of
U.S. Environmental Protection Agency, Defendants-Appellants,
Peat Methanol Association; Prulean Farms, Inc; First
Colony Farms, Inc., Defendants-Appellees,
Peat Energies Company, Amicus Curiae.
 No. 87-3183.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 3, 1988.
Decided Oct. 14, 1988.
Rehearing and Rehearing In Banc Denied Dec. 14, 1988.
 
 Maria A. Iizuka (Roger J. Marzulla, Acting Asst. Atty. Gen., Jean A. Kingrey, Jacques B. Gelin, Dept. of Justice, Washington, D.C., J. Douglas McCullough, Acting U.S. Atty., Stephen A. West, Asst. U.S. Atty., Raleigh, N.C., Gail Cooper, U.S. E.P.A., Martin Cohen, U.S. Army Corps of Engineers, Washington, D.C., on brief), for defendants-appellants.
 David L. Rose (Jerry Jackson, Fisheries and Wildlife Div., Nat. Wildlife Federation, on brief), Andrea Ann Timko (Carl Willner, Wilmer, Cutler & Pickering; Washington, D.C., Amos C. Dawson, III, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, N.C., on brief), W.B. Carter, Jr. (Carter, Archie & Hassell, Washington, D.C., Robert H. Blank, Thomas T. Andersen, Peeples, Earl & Blank, P.A., Miami, Fla., on brief), for plaintiffs-appellees. (Thomas N. Barefoot, Julian D. Bobbitt, Jr., Michael W. Hubbard, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., on brief), for amicus curiae.
 Before CHAPMAN and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The Environmental Protection Agency (EPA) and the Army Corps of Engineers appeal from a district court order awarding attorneys' fees to the National Wildlife Federation and several other environmental groups (collectively NWF) who challenged the Corps' determination that two tracts of land in North Carolina were not wetlands under section 404 of the Clean Water Act. The NWF also complained about the EPA's failure to exercise its authority with respect to wetlands. We affirm the district court's award of fees under the Clean Water Act and hold that the NWF is a prevailing party entitled to attorneys' fees. We also affirm the district court's refusal to assess fees against the private parties. Finally, we hold that the district court did not abuse its discretion in its computation of fees, except that the district court should have based the fee award on historic rates, instead of current rates. We therefore vacate that portion of the district court's judgment and remand for recomputation of attorneys' fees using historic rates.
 
 
 2
 * This case involved a dispute over two tracts of land in eastern North Carolina. In addition to complaining that the federal defendants improperly determined that tract 1 was not wetlands, NWF alleged that Prulean Farms, Inc., owner of tract 2, was illegally discharging dredged and fill material onto tract 2 and that the Corps illegally condoned Prulean's actions. Peat Methanol Associates and First Colony Farms later intervened as defendants. First Colony owned tract 1 and Peat Methanol planned to construct a peat-to-methanol fuel plant on tract 1.
 
 
 3
 Shortly after suit was filed the parties entered into a consent decree, resolving the NWF's allegations concerning tract 2. The consent decree satisfied the NWF's ultimate objective of preserving the environmental integrity of tract 2.
 
 
 4
 With respect to tract 1, the district court held that the federal defendants failed to perform their statutory duties and that the Corps' determination that the property was not wetlands was arbitrary and capricious. The court remanded to the Corps for a proper wetlands determination and enjoined any dredge and filling of tract 1 until a proper determination was made and the necessary permits were obtained. National Wildlife Federation v. Hanson, 623 F.Supp. 1539 (E.D.N.C.1985). The court then awarded NWF attorneys' fees, costs, and expert witness fees pursuant to 33 U.S.C. Sec. 1365(d).*
 
 II
 
 5
 The government argues that the NWF's suit did not qualify as a citizen suit under section 1365(a)(2) because the NWF challenged the Corps' exercise of discretion with respect to wetlands and not the EPA administrator's failure to carry out a mandatory duty.
 
 
 6
 Sections 404 and 505(a) of the Clean Water Act, 33 U.S.C. Secs. 1344 and 1365(a) must be read together. Section 1344 authorizes the Secretary of the Army acting through the Army Corps of Engineers to regulate the discharge of dredged or fill material into United States waters, including wetlands. The Corps' permit decisions must be based on EPA guidelines. Section 1344(c) authorizes the Administrator of the EPA to block or override a Corps' permit decision. Section 1365(a)(2) authorizes any citizen to commence a civil action "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."
 
 
 7
 It is quite clear that both the Corps and the EPA are responsible for the issuance of permits under the CWA and enforcement of their terms. The Corps has the nondiscretionary duty to regulate dredged or fill material, and to fulfill that duty it must make reasoned wetlands determinations. See United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 138-39, 106 S.Ct. 455, 465-66, 88 L.Ed.2d 419 (1985). The Corps has a mandatory duty to ascertain the relevant facts, correctly construe the applicable statutes and regulations, and properly apply the law to the facts. The EPA is ultimately responsible for the protection of wetlands. See Avoyelles Sportsmen's League, Inc. v. Marsh, 715 F.2d 897 (5th Cir.1983) (reviewing EPA and Corps wetlands determination to ensure that the agencies correctly ascertained the extent of the wetlands on the site in question).
 
 
 8
 Congress cannot have intended to allow citizens to challenge erroneous wetlands determinations when the EPA Administrator makes them but to prohibit such challenges when the Corps makes the determination and the EPA fails to exert its authority over the Corps' determination. Section 1365(a)(2) should be interpreted in conjunction with Civil Procedure Rule 20 (joinder) to allow citizens to sue the Administrator and join the Corps when the Corps abdicates its responsibility to make reasoned wetlands determinations and the Administrator fails to exercise the duty of oversight imposed by section 1344(c).
 
 
 9
 In view of our conclusion that the district court had jurisdiction, we need not consider NWF's alternative argument invoking res judicata.
 
 III
 
 10
 The government also argues that the NWF is not entitled to attorneys' fees under the CWA because the court reviewed the Corps' wetlands determination under Administrative Procedure Act standards and that Act does not provide for attorneys' fees.
 
 
 11
 The CWA does not establish the standards for reviewing either the EPA's or the Corps' wetlands determinations. The appropriate standards are set forth in the Administrative Procedure Act, 5 U.S.C. Sec. 701 et seq., which provides that a court "shall set aside agency findings, conclusions and actions that are arbitrary, capricious or an abuse of discretion." See Avoyelles, 715 F.2d at 904. The district court's review of the Corps' wetlands determination under APA standards was proper and did not alter the jurisdictional base of the court's judgment. See Roosevelt Campobello Int'l Park Comm'n v. EPA, 711 F.2d 431, 433-37 (1st Cir.1983); Sierra Club v. Army Corps of Engineers, 701 F.2d 1011, 1032 (2d Cir.1983).
 
 IV
 
 12
 The government assigns error to the district court's decision that the NWF is a prevailing party within the meaning of section 1365(d). Specifically, the government argues that because the district court's judgment on the merits was not final, the NWF has not yet prevailed and it will not prevail until the Corps issues a final determination that tract 1 is wetlands. The government relies on a number of cases in which the courts held that an award of fees was premature when successful parties on appeal had secured remands but had not yet prevailed on the ultimate issues. Typical of these is Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). In that case, the Court held that a civil rights plaintiff was not entitled to an interim award of attorneys fees because he had succeeded only in having a directed verdict reversed. The defendant's liability had not been established.
 
 
 13
 Hanrahan explained that a fee claimant may nonetheless be a prevailing party without having obtained a final judgment. The Court stated that interim fees are appropriate when parties have prevailed by vindicating rights through a consent judgment or without formally obtaining relief. Interim fees are also appropriate where the fee claimant has established the liability of the opposing party but no remedial orders have been entered. 446 U.S. at 756-58, 100 S.Ct. at 1988-89.
 
 
 14
 In applying Hanrahan, it is important to distinguish between traditional civil cases and environmental litigation, for if we do not interpret "prevailing" in light of the goals of the Clean Water Act, the legislative purpose in awarding fees will be frustrated. See Conservation Law Foundation v. Secretary of the Interior, 790 F.2d 965, 967-68 (1st Cir.1986). The legislative history of the fee shifting provisions indicates that they were enacted to encourage litigation to ensure proper administrative implementation of the environmental statutes. See Pennsylvania v. Delaware Valley Citizen's Council for Clean Air, 478 U.S. 546, 106 S.Ct. 3088, 3092-94, 92 L.Ed.2d 439 (1986) (Blackmun, J., dissenting). Both the Clean Air Act, 42 U.S.C. Sec. 7607(f), and section 1365(d) authorize a court to award fees whenever it "determines that such award is appropriate." Drawing on the legislative history of the Clean Air Act, the Court in Ruckelshaus v. Sierra Club, 463 U.S. 680, 686-93, 103 S.Ct. 3274, 3278-82, 77 L.Ed.2d 938 (1983), explained that it is appropriate for courts to award fees to partially prevailing parties where the action served to promote the purposes of the Act.
 
 
 15
 Unlike plaintiffs in traditional civil actions, plaintiffs in environmental suits do not seek to vindicate personal rights and they obtain no financial benefit if they win. Agency "liability" is not at issue. What is at issue here is whether the Corps has properly performed its duty to make a reasoned wetlands determination and whether the EPA has exercised the authority conferred on it by section 1344(c). The NWF successfully demonstrated in this case that the Corps did not undertake the necessary investigation to determine whether tract 1 contained wetlands and that the EPA took no corrective action. Whether or not the Corps and EPA ultimately determine that tract 1 is wetlands, the NWF will still have served a key purpose of the citizen suit provision which is to ensure that the agencies fulfill their duties under the CWA responsibly.
 
 
 16
 In light of the purpose of the citizen suit provision, the NWF has prevailed in a way that the plaintiffs in Hanrahan and other civil cases did not. Since the district court is not empowered to substitute its judgment for that of the agency and cannot make its own wetlands determination, the NWF obtained all of the relief that the district court had authority to render. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); Avoyelles, 715 F.2d at 904.
 
 V
 
 17
 The computation of attorneys fees is primarily the task of the district court, and we are not entitled to disturb a district court's exercise of discretion even though we might have exercised that discretion quite differently. Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d40 (1983); Daly v. Hill, 790 F.2d 1071, 1078-79 (4th Cir.1986). As we stated in Ballard v. Schweiker, 724 F.2d 1094, 1098 (4th Cir.1984):
 
 
 18
 It is important that the district court remain primarily responsible for resolving fee disputes, because it is in the better position to evaluate the quality and value of the attorney's efforts. The very discretion basic to the trial court's duties creates results that inevitably differ in degree.... We gauge only whether a trial court abuses its proper discretion.
 
 
 19
 With that in mind, we address the government's arguments.
 
 VI
 
 20
 The government asserts that the district court erred in using rates charged by attorneys in Washington, D.C. The government contends that the court should have used rates charged in Raleigh, North Carolina, because that is the community in which the court sat.
 
 
 21
 The community in which the court sits is the appropriate starting point for selecting the proper rate. See Donnell v. United States, 682 F.2d 240, 251 (D.C.Cir.1982). Nevertheless, "[t]he complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 768 (7th Cir.1982). In Chrapliwy, the court identified two questions to be asked in determining whether an exception to the general rule should be granted: are services of like quality truly available in the locality where the services are rendered; and did the party choosing the attorney from elsewhere act reasonably in making that choice? 670 F.2d at 769.
 
 
 22
 In this case, the NWF produced evidence that 1) its local counsel in Raleigh, North Carolina, was unable to take this case; 2) efforts to retain the Sierra Club Defense Fund were unsuccessful; and 3) the nearest counsel with the requisite expertise in complex environmental litigation and the willingness to forgo compensation temporarily and perhaps permanently, was in Washington, D.C. The government did not controvert the NWF's evidence. The district court found that the NWF acted reasonably in selecting Advocates for the Public Interest, a public interest law firm in Washington, D.C., to represent them. The district court's findings are not clearly erroneous, and its decision to use Washington, D.C., rates to compute the lodestar was not an abuse of discretion.
 
 VII
 
 23
 At oral argument the government asserted that the district court erred in using current rates instead of historic rates to compute the lodestar. While it is true that we ordinarily will not consider issues raised for the first time on appeal, we have recognized that in very limited circumstances we may consider such an issue if the error is "plain" and our refusal to consider it would result in a miscarriage of justice. Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir.1985).
 
 
 24
 The NWF filed suit in this case in late 1983, and the litigation, including the petition for attorneys fees, has spanned a period of over four years. Most of the hours in the case were worked in 1984 and 1985. In computing the lodestar, the district court used rates charged by Washington, D.C., law firms in 1986.
 
 
 25
 In Library of Congress v. Shaw, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Supreme Court held that traditional government immunity barred an award of interest or other compensation for delay when the government is held liable for attorneys fees, unless there is express language in the fee-shifting statute stating otherwise. 478 U.S. at 317-21, 106 S.Ct. at 2963-65. Refusing to recognize a distinction between a formal interest charge and an enhancement for delay, the Court reversed a 30% enhancement to the lodestar intended to compensate counsel for the delay in receiving payment for the legal services rendered.
 
 
 26
 Here, although the district court did not expressly state that it was using current rates to compensate for delay, in its discussion of the lodestar computation, it noted that counsel had waited many years to collect for their services. Following the Supreme Court's reasoning in Shaw, we hold that current rates may not be used when computing attorneys fees to be paid by the government. See Thompson v. Kennickell, 836 F.2d 616, 619 (D.C.Cir.1988). The district court should have based the fee award on historic rates, those in effect at the time the attorney hours were expended. In computing attorneys' fees, each attorney's hours should be identified by year, and the applicable rate for that year should then be multiplied by the number of hours expended during the year. We vacate that portion of the district court's judgment and remand for recomputation of the fee award using historic rates.
 
 VIII
 
 27
 The government also asserts that the district court improperly considered factors, derived from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). The government claims that the district court ignored the Supreme Court's decision in Blum v. Stenson, 465 U.S. 886, 896-902, 104 S.Ct. 1541, 1547-50, 79 L.Ed.2d 891 (1984), in which the Court announced that the factors set forth in Johnson should normally be subsumed in the lodestar.
 
 
 28
 As we explained in Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir.1986),
 
 
 29
 under Blum, the critical focus in calculating a reasonable attorney's fee is in determining the lodestar figure. If a lodestar fee is properly calculated, adjustment of that figure will, in most cases, be unnecessary. Consequently, Blum has shifted the timing of the Johnson analysis as it has been applied in this circuit.
 
 
 30
 Here, the district court did not, as the government claims, arrive at a lodestar figure and then adjust it upward to account for the Johnson factors. Consistent with Blum and Daly, the district court properly considered pertinent facts such as the ability and experience of counsel in successfully conducting complex environmental litigation, to ascertain the lodestar figure.
 
 
 31
 Although disclaiming that it seeks a cost-based measure of fees for a nonprofit law firm, the government faults the district court because it used market rates in determining the lodestar.
 
 
 32
 The district court did not err. In Blum, 465 U.S. at 892-96, 104 S.Ct. at 1545-47, the Court canvassed the legislative history of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. Sec. 1988, and concluded that fee awards for nonprofit legal service organizations should be based on prevailing market rates. The district court followed Blum. It based its decision on prevailing market rates. It selected the upper end of these rates because the evidence disclosed that lawyers of comparable experience were compensated at the upper end of prevailing market rates.
 
 IX
 
 33
 Finally, the government asserts that the district court erred in ordering the government to pay the entire fee award rather than ordering Prulean and Peat Methanol Associates to pay an equitable share. The government argues that Prulean and Peat Methanol should pay a portion of the fee award because; some of the hours expended by NWF's counsel were in response to Prulean and Peat Methanol; to the extent the NWF prevailed on count 2, it prevailed against Prulean because the consent decree dismissing count 2 required action by Prulean but not by the government; and requiring the government to pay the entire fee award is inconsistent with the principle that waivers of sovereign immunity are to be strictly construed.
 
 
 34
 There is no merit to any of the government's contentions. Prulean was a party in this case for slightly over three months. Prulean did only that which it was permitted to do by the Corps.
 
 
 35
 Similarly, Peat Methanol, which had proposed to construct a peat-to-methanol fuel plant on part of tract 1, bears no fault in this litigation. It not only cooperated with the Corps, it voluntarily commissioned numerous studies to assess the environmental impact of its proposed peat-mining operations even though it was not required to do so by law. Peat Methanol's activity in this litigation was also very limited.
 
 
 36
 Prulean and Peat Methanol both had a stake in the outcome of this litigation and they sought to protect their interests. That fact does not warrant the assessment of attorneys fees against them, for if the Corps had fulfilled its duty to make a reasoned wetlands determination or if the Administrator of EPA had performed his duty the litigation would never have ensued. The district court did not err in declining to charge a portion of the fee award to Prulean and Peat Methanol.
 
 
 37
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 
 
 
 *
 Section 505(d) of the Clean Water Act, 33 U.S.C. Sec. 1365(d), provides:
 The court in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.