887 F.2d 1079
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Leonard R. JESSEE, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR, Respondent.
 No. 88-2550.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 12, 1989.
Decided: Oct. 3, 1989.
Rehearing and Rehearing In Banc Denied Nov. 20, 1989.
 
 Paul Graham Beers (Client Centered Legal Services of Southwest Virginia, Inc., on brief), for petitioner.
 Elizabeth Hopkins (Jerry G. Thorn, Acting Solicitor of Labor; Donald S. Shire, Associate Solicitor for Black Lung Benefits; Michael J. Denney, Counsel for Appellate Litigation; Patricia M. Nece, Acting Assistant Counsel for Appellate Litigation, U.S. Department of Labor, Office of the Solicitor, on brief), for respondent.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Leonard R. Jessee appeals from a Benefits Review Board decision affirming the denial of his benefits claim. Jessee advances the familiar argument that substantial evidence does not support a conclusion that he is not presumptively disabled by pneumoconiosis. Jessee also presents the apparently novel argument that the ALJ ought to have imported into the black lung benefits realm certain Social Security regulations that allow claims for temporary disability.
 
 
 2
 We conclude that substantial evidence supports the ALJ's denial of the presumption. We respect the ingenuity that Jessee's second argument reflects, but decline to address it for the reason hereinafter set forth. We therefore affirm.
 
 I.
 A.
 
 3
 Jessee sought black lung benefits first in a June 13, 1970 filing with the Social Security Administration ("SSA"). The SSA denied the claim on January 1, 1976. Jessee requested a fresh SSA review on March 30, 1978, following enactment of the Black Lung Benefits Reform Act of 1977. SSA again denied benefits and forwarded the claim to the Secretary of Labor ("Secretary") for further treatment.[1]
 
 
 4
 An administrative law judge conducted a formal hearing in Jessee's case on September 12, 1985. A second judge took over the case after the hearing but before any decision issued. The parties did not request rehearing before the new judge, who issued a decision and order denying benefits on August 5, 1986. The decision found insufficient evidence to warrant a presumption of disability under 20 C.F.R. Sec. 727.203(a)(1)-(4). The Board affirmed on May 13, 1988.[2]
 
 B.
 
 5
 Jessee is fifty-eight years old. He has essentially no formal education and is functionally illiterate. Jessee has sixteen years of coal mine employment, and left the mines in 1962 or 1963 after suffering a back injury on the job.
 
 
 6
 Jessee's dispute is with the weight assigned favorable physicians' reports and pulmonary function study ("PFS") results. Our review of the evidence therefore gives attention only to these data.
 
 
 7
 Eight PFS results are in the record. The first, taken on September 12, 1972, and the last two, taken on April 14, 1980 and July 30, 1985, yielded non-qualifying values. The intervening five presented qualifying values; of these, the ALJ found one, taken on May 12, 1977, not to conform to the quality standards of 20 C.F.R. Sec. 410.430. The ALJ noted that the last two of the five results reflected questionable effort by Jessee.[3]
 
 
 8
 The judge refused to grant Jessee a presumption of disability under Sec. 727.203(a)(2). Observing that pneumoconiosis is by definition a "progressive and irreversible" disease, the judge accorded greater weight to the most recent results. The judge found these results, which included FEV1 values nearly 100% normal, to demonstrate a dramatic improvement in Jessee's pulmonary condition, an improvement inconsistent with pneumoconiosis.
 
 
 9
 The ALJ then addressed whether the relevant medical reports, some delivered by Jessee's and some by the Secretary's physicians, established the existence of any totally disabling respiratory or pulmonary impairment. 20 C.F.R. Sec. 727.203(a)(4). The record contained the reports of five physicians who had examined Jessee or his records between April 5, 1973 and July 30, 1985.
 
 
 10
 The earliest report, that of Dr. Sutherland, noted no x-ray evidence of pneumoconiosis and no apparent breathing dysfunction, though the report presented a diagnosis of mild bronchitis. Dr. Odom's report, dated November 4, 1974, noted x-ray evidence of simple pneumoconiosis. Odom diagnosed coal worker's pneumoconiosis, emphysema, and a herniated spinal disc, and opined that Jessee "is totally and permanently disabled for arduous labor, coal mining and work in a dusty environment."
 
 
 11
 Dr. Fleenor also diagnosed mine-related black lung in his May 16, 1975 report. Fleenor appears to have relied only on Jessee's history of shortness of breath and a dry cough, and on the coarse breath sounds and rales observed during a physical examination of Jessee's lungs. Fleenor assessed Jessee as having "[t]otal disability--walks slowly with a cane." In a September 10, 1985 note written on a prescription slip, Fleenor stated that Jessee took several sorts of medication for black lung-related fluid problems.
 
 
 12
 Dr. Schmidt rendered a consultation report on May 12, 1977. Schmidt administered a PFS, an arterial blood gas study, and a chest x-ray. Schmidt was unable to establish a diagnosis of occupational pneumoconiosis on the results before him, though he did diagnose chronic bronchitis, cerebral vascular disease and its sequelae, and lumbar disc disease.
 
 
 13
 The most recent report is that of Dr. Paranthaman, who examined Jessee on July 30, 1985. Paranthaman noted a history of shortness of breath and productive cough, but found Jessee's chest and lungs normal on physical examination. The results of a chest x-ray, a PFS, a blood gas study, and an EKG were normal as well, though Paranthaman found the MVV value from the PFS unreliable due to poor cooperation. Paranthaman diagnosed total disability based on Jessee's back problems, but concluded that Jessee did not have pneumoconiosis and that his "overall respiratory impairment is minimal."
 
 
 14
 On grounds similar to those employed in his (a)(2) analysis, the ALJ found the physicians' reports to preponderate against a presumption of pulmonary disability. The judge noted that the most recent reports, the only diagnoses over the eight-year period prior to the hearing, either could not establish or explicitly ruled out a diagnosis of pneumoconiosis.
 
 II.
 A.
 
 15
 Jessee first proposes that substantial evidence does not support the denial of a presumption of disability under Sec. 727.203(a)(2) or (a)(4). We disagree. While the ALJ ought not to have required Jessee to prove that his disabling pulmonary condition, if any, was mining-related pneumoconiosis, we do not think this is what the ALJ did in weighing the evidence in light of the nature of pneumoconiosis.
 
 
 16
 The ALJ's opinion reflects a basic conclusion, informed by knowledge that pneumoconiosis is a progressive and irreversible condition, that Jessee had no disabling pulmonary condition at the time of the hearing. There is no error in the ALJ's reference to the character of pneumoconiosis as a means of weighing the PFS evidence. See Knuckles v. Director, OWCP, 869 F.2d 996 (6th Cir.1989); Phillips v. Director, OWCP, 768 F.2d 982, 984-85 (8th Cir.1985). We cannot accept that the ALJ ought to have granted the (a)(2) presumption simply because the greater number of PFS results yielded positive values. We therefore conclude that substantial evidence supports the ALJ's denial of the (a)(2) presumption. Similarly, the ALJ's conclusion that the diagnoses do not preponderate in Jessee's favor finds ample support in the widely varying assessments of Jessee's pulmonary condition, with the most recent two reports identifying moderate or minimal respiratory impairment.[4]
 
 B.
 
 17
 Jessee believes there is warrant in the black-lung regulations for an award of benefits for temporary disability, and that the Secretary ought to have granted such an award on the evidence before it. Jessee points to, among other regulations, 20 C.F.R. Sec. 410.432, which implies that a miner determined totally disabled by pneumoconiosis may become capable of working, and to 20 C.F.R. Sec. 410.476, which requires a miner determined totally disabled to notify the SSA if his condition improves, to support his argument that the regulations contemplate pneumoconiosis as a potentially temporary disabling ailment. See also 20 C.F.R. Secs. 718.404, 725.203(b)(2).
 
 
 18
 We decline to decide Jessee's novel suggestion that he should be awarded benefits for a period of temporary disability. We have not been directed to anything indicating that he raised this argument before the SSA, the ALJ, or the Secretary, or that good reasons exist for his not having done so. Since it was asserted for the first time on appeal, it was not properly presented to us, and we refuse to rule upon it. Except under circumstances not present here, this court does not pass upon issues not previously raised. National Wildlife Federation v. Hanson, 859 F.2d 313, 318 (4th Cir.1988).
 
 III.
 
 19
 For the foregoing reasons, we conclude that the Board did not err in upholding the denial of benefits.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The Secretary had conducted a proceeding, parallel to review by the SSA, on Jessee's November 13, 1974 claim for benefits from it. The Secretary denied benefits on August 18, 1977 and again, after review under the 1977 Act, on April 1, 1981
 
 
 [2]
 On July 21, 1989, following oral argument in his appeal, Jessee moved for leave to file a supplemental brief. The brief presents further argument on the issue of Jessee's entitlement to a closed period of benefits. We grant the motion and have considered Jessee's supplemental brief and the Director's responsive supplemental brief, which we also allow to be filed
 
 
 [3]
 Because better effort could only have produced higher, potentially qualifying, values, the judge found no reason to discount the last two results for poor cooperation
 
 
 [4]
 Our affirmance of the denial of a presumption of disability makes unnecessary our consideration of whether the Secretary ought by extrapolation from the holding in Pittston Coal Co. v. Sebben, 109 S.Ct. 414 (1988) to have been limited to the rebuttal methods available under 20 C.F.R. Sec. 410.490