8 F.3d 823
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Patricia L. WHITE, Plaintiff-Appellee,
v.
Anthony FRANK, Postmaster General, Defendant-Appellant.
 No. 92-1579.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1993.
Decided: October 18, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, Senior District Judge. (CA-90-1378-R)
 Argued: Kevin Barclay Rachel, Office of Labor Law, United States Postal Service, Washington, D.C., for Appellant.
 Squire Padgett, Washington, D.C., for Appellee.
 On Brief: Jesse L. Butler, Assistant General Counsel, Office of Labor Law, United States Postal Service, Washington, D.C.; Richard D. Bennett, United States Attorney, Donna C. Sanger, Assistant United States Attorney, Baltimore, Maryland, for Appellant.
 David L. Rose, Debra Palmer Henry, Washington, D.C.; Isaac Joe, Baltimore, Maryland, for Appellee.
 D.Md.
 REVERSED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and RESTANI, Judge of the United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff-appellee Patricia L. White filed suit against the United States Postal Service ("USPS") alleging race and sex discrimination. White claimed that during each of her three pregnancies, the USPS unlawfully discriminated against her by denying her requests for light duty. The district court found no evidence of race discrimination but concluded that the USPS had discriminated against White on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a). The USPS, as defendant, filed the instant appeal and has contended that the district court's finding of sex discrimination was clearly erroneous because it was based on the use of an erroneous legal standard and was against the weight of the evidence.
 
 
 2
 Within the USPS, there are several "crafts," including, inter alia, a clerk craft, a city carrier craft, and a rural carrier craft. Each craft is represented by its own national union. The USPS and the National Rural Letter Carriers' Association had, at all times relevant to the instant case, a collective bargaining agreement which established wages, hours, working conditions, grievance procedures, etc. Article 13 of the agreement governed the assignment of ill or injured employees. Sections 1 and 2 of Article 13 related to the provision of "limited duty." "Limited duty" is provided to employees who are unable fully to perform their regular duties as a result of on-the-job injuries.[1] By contrast, "light duty" is defined by the USPS as a duty requiring less exertion than regular duties that is given to employees who are unable to perform fully their regular duties as a result of illnesses or injuries sustained off the job. Section 3 of Article 13 referenced "light duty" and stated:
 
 No Light Duty Assignments
 
 3
 In the rural carrier craft, at any local installation, regular rural routes shall not be considered for any light duty assignment.
 
 
 4
 In asserting its defense during the proceedings below, the USPS relied on those provisions and, in particular, on the agreement's distinction between "limited duty" and "light duty."
 
 
 5
 Appellee White worked as a rural letter carrier at the Annapolis, Maryland, United States Post Office on Legion Avenue. In 1985, 1986, and 1988, White became pregnant. During each pregnancy she experienced difficulties performing all of her duties and, as a result, she requested light duty. In 1985, during her first pregnancy, White sought out her immediate supervisor, George Stallings, and requested light duty. Stallings and later the Postmaster of the Annapolis Post Office, Charles Saylor, informed White that there was no light duty in the rural craft.[2] In addition, White received a letter from Saylor, dated April 24, 1985, in which he officially denied her request for light duty. The letter stated: "In regard to our conversation of April 23, I do not have a suitable light duty assignment for you. While I agree with Gary [the union shop steward] that a rural carrier could be placed in a light duty position, such a position is not available at this office."
 
 
 6
 In 1986, White verbally requested a light duty assignment as a result of her second pregnancy. At the time of the request, Richard Muller was the temporary officer in charge at the Annapolis post office. Muller testified that in denying the request he referred to Article 13, Section 3 of the rural craft's collective bargaining agreement as prohibiting light duty for the rural carrier craft. There is, as the district court noted, no written record of the second denial.
 
 
 7
 Finally, in 1988, White again requested light duty as a result of her third pregnancy. The station manager at the time, Judy George Thompson, initially denied the request. Several days later, Postmaster Saylor, citing Article 13, Section 3 of the rural craft's bargaining agreement, formally denied the request.
 
 
 8
 After pursuing her administrative remedies, White filed suit in federal court alleging sex and race discrimination. Both parties moved for summary judgment. The USPS contended that two of White's claims were untimely, while White argued that there was no genuine issue as to any material fact. The district court denied both motions. The case was tried before the district court on July 22 and 23, 1991. At the bench trial, both Saylor and Muller testified that they had never granted light duty to a "rural carrier," nor had they ever, to the best of their knowledge, received a light duty request from a rural letter carrier.
 
 
 9
 The district court found no evidence of race discrimination. The court concluded, however, that White had been the victim of sex discrimination. "The record is replete," it noted, "with evidence that each controversy arose out of one of the plaintiff's pregnancies and the interpretation of the Agreement by defendant's management representatives." The court then determined that, "as a matter of law," the USPS had "misread and misinterpreted" the provisions of the collective bargaining agreement to "discriminate against the plaintiff on the basis of her sex and her pregnancies." The court found that the USPS did not consistently apply the collective bargaining agreement to bar light duty to rural carriers on the grounds that the USPS had "concede[d] that there are circumstances where Rural Carriers could be granted a light duty assignment." Therefore, the court's reasoning ran, the USPS' explanation that the Agreement did not permit light duty assignment to White at the Annapolis office was merely an "arbitrary" and "artificial distinction."
 
 
 10
 Further, the court concluded that White was not required to identify a specific similarly situated person outside of her protected group who had received light duty (the fourth prong of the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-02 (1973)), because the USPS' "own testimony and documents" made it "clear" that "as a group rural carriers are afforded the privilege of light duty assignments under circumstances similar to those in which it denied the privilege to the plaintiff." The court therefore found in favor of White on her sex discrimination claim.
 
 
 11
 The sole issue on appeal is whether the district clearly erred in finding that the USPS discriminated against White on the basis of her sex. The district court's decision should be reversed only if it is shown that, without regard to what the "actual" facts may be, " 'the findings under review were induced by an erroneous view of the controlling legal standard; or are not supported by substantial evidence; or were made without properly taking into account substantial evidence to the contrary; or are against the clear weight of the evidence considered as a whole.' " Moore v. City of Charlotte, 754 F.2d 1100, 1104 (4th Cir.) (quoting Miller v. Mercy Hosp., Inc., 720 F.2d 356, 361 (4th Cir. 1983), cert. denied, 470 U.S. 1083 (1985)), cert. denied, 472 U.S. 1021 (1985)); see also Anderson v. City of Bessemer City, 470 U.S. 564 (1985).
 
 
 12
 The USPS has asserted that the district court's finding of sex discrimination in the instant case is clearly erroneous because the court was induced by an erroneous view of the controlling legal standard and reached its conclusion against the weight of the evidence as a whole. More specifically, the USPS has contended that the district court committed its first error when it excused White from having to identify any similarly situated individual who had received more favorable treatment. Furthermore, according to the USPS, even if the court did not err by excusing White from identifying similarly situated individuals, the court's finding that the USPS had a practice of permitting rural carriers light duty in comparable situations and that therefore it discriminated against White is not based on a plausible reading of the record.
 
 
 13
 It is true that White failed to identify any similarly situated employees. Although she attempted to present several employees who had been given light duty, White's proffers repeatedly were rejected by the court. See, e.g., Moore, 754 F.2d at 1105-06 (concluding that no similarly situated employees had been identified and finding no evidence to support a conclusion of an intent to discriminate). Nevertheless, we cannot overlook the fact that, as the plaintiff, White retained the ultimate burden of persuasion that the defendant intentionally discriminated against her on the basis of her sex. See, e.g., Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). The critical and ultimate inquiry in a discrimination case that, like the instant one, has been tried on the merits is the question of discrimination vel non. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983) (The "factual inquiry" in a Title VII case is whether there was intentional discrimination.). As the Supreme Court commented in Aikens,
 
 
 14
 Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."
 
 
 15
 Id. at 715 (quoting Burdine, 450 U.S. at 253).
 
 
 16
 Having reviewed the record in detail and also keeping in mind the burden on the plaintiff ultimately to prove discriminatory intent by a preponderance of the evidence, we have come to the conclusion that the district court clearly erred in ruling that the USPS discriminated against White on the basis of her sex. We begin by agreeing with the district court that Postmaster Saylor and Temporary Officer in Charge Muller misread and misapplied the rural craft's bargaining agreement. The language of Article 13, Section 3 of the agreement does not on its face exclude rural carriers from receiving light duty assignments. Rather, the phrase refers to "regular rural routes." "Regular rural routes," the agreement states, "shall not be considered for any light duty assignments." Performance of rural route duties, not one's classification, is what is referred to. Light duty in some craft other than "rural routes" was not prohibited.
 
 
 17
 Saylor and Muller, however, testified that they denied White's light duty requests because they read Article 13, Section 3 as prohibiting "light duty in the rural craft." Postmaster Saylor continued that he "could conceive" of some circumstances where a postmaster at some location could grant light duty to a rural carrier:
 
 
 18
 Well, in a small office where there's the postmaster and a rural carrier and a clerk [from the clerk craft], if the rural carrier became disabled because of an injury at home and the clerk was, say out sick or on vacation, then it would be obvious, the postmaster couldn't deliver the rural route and be a window clerk, so it's conceivable that the postmaster could call up the rural carrier and say what can you do? Can you case your mail. Can you service the counter? And try to work around the problem as best he can in that particular circumstance.
 
 
 19
 Saylor's testimony formed the basis for the USPS' assertion in its proposed findings of fact that there are circumstances at post offices other than the Annapolis Post Office under which a rural carrier could be granted a light duty assignment.
 
 
 20
 The district court used Saylor's allusion to a possible situation in which a rural carrier (possibly male or female) could receive light duty as evidence that "as a group rural carriers are afforded the privilege of light duty assignments under circumstances similar to those in which" it was denied to White. From there the court inferred that the
 
 
 21
 USPS' explanation for denying White light duty was arbitrary, and it concluded that the USPS had intentionally discriminated against White on the basis of her sex.
 
 
 22
 Although we are reluctant to reverse a district court's finding of intent, we conclude that the court's ultimate determination in the instant case simply is not supported by the record as a whole. The interpretation of the contract was erroneous and resulted in undue hardship for White.[3] However, causation of the wrong and the right to the remedy had to be shown by White. Without more, the misinterpretation of the agreement does not, on the facts of the instant case, constitute a violation of Title VII. We have stated before that Title VII is not a "bad acts" statute:
 
 
 23
 [A] finding that the reasons proffered by the defendants were, in some general sense "unworthy of credence" does not of itself entitle plaintiff to prevail. The reason for their lack of credence must be the underlying presence of proscribed discrimination. We have no authority simply to require employers to use the "best" standards and procedures available to them.
 
 
 24
 Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989) (citation omitted); see also St. Mary's Honor Ctr. v. Hicks, U.S., 125 L. Ed. 2d 407 (1993) (stating that the trier of fact's rejection of the employer's asserted reasons for its actions does not mandate a finding for the plaintiff and holding that there still must be a finding of discrimination-which may be based, using the proper procedures, on disbelief of the defendant's reasons "together with the elements of the prima facie case.").
 
 
 25
 In the instant case, causation had not been proven. There is no evidence in the record that any rural carrier anywhere, let alone at the Annapolis Post Office, actually received a light duty assignment. As noted, all of the employees offered by White as similarly situated were discounted by the district court.[4] The critical and unrefuted evidence in the record is that neither Saylor nor Muller has ever granted light duty to a rural carrier. Given the number of workers and crafts present at the Annapolis Post Office, Saylor testified that he could not conceive of anyone in the rural craft receiving light duty in the Annapolis Post Office. In short, there is no evidence to support a finding that either Saylor or Muller intentionally discriminated against White on the basis of her sex.
 
 
 26
 Without more evidence from the plaintiff, the district court's leap from the USPS' erroneous interpretation of the contract to the conclusion that "rural carriers as a whole are granted light duty" under similar circumstances proceeds from speculation rather than from a legally justifiable inference from the evidence. Although the record displays conduct hardly commendable, a wrong reason for a justified conclusion, it does not support a finding of intent to discriminate.[5]
 
 
 27
 In light of the record and our conclusions, the judgment is
 
 
 28
 REVERSED.
 
 
 
 [1]
 Section 1 of the agreement states:
 Assistance for Employees
 The Employer will make an effort to assist employees who through occupational injury or occupational illness are unable to perform their regularly assigned duties. This effort will consist of possible assignment to limited duty work if such is available.
 Section 2 states:
 Federal Employees' Compensation Act
 It is understood that the provisions of this Agreement are subject to the obligations and responsibilities imposed by the Federal Employees' Compensation Act and its implementing regulations. Recognizing the mutual obligation to be fully responsive to insure that employees with job-related illnesses or injuries are returned to duty subject to their medical restrictions.
 
 
 [2]
 According to the testimony, only the Postmaster, or the temporary officer in charge, has the authority to grant light duty requests
 
 
 [3]
 It may well have been prompted by unjustified considerations
 
 
 [4]
 On appeal White does not appear to rest on the district court's final analysis of the case as expressed in its Memorandum Opinion. Instead, she continues to rely on facts not cited by the district court as relevant, and she continues to refer to various employees as"similarly situated." The district court, however, found that those employees were not similarly situated, and its findings are not clearly erroneous. Its reasons for rejecting White's proffers included, inter alia, the fact that some of the employees had been injured on the job and thus were receiving limited duty and the fact that still others were receiving a different form of assistance, such as auxillary assistance for an "overburdened route," as defined in Article 9.2 of the rural craft's agreement
 The USPS readily admits that it provides limited duty assignments in all crafts to employees of all crafts. As it has emphasized, it is required to do so by law.
 
 
 [5]
 White also has raised anew on appeal the contention that the USPS' interpretation of the bargaining agreement as prohibiting light duty in the rural craft was itself violative of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). We initially are not persuaded by the arguments presented, and we decline to address the issue because it was not argued to the district court. See National Wildlife Fed'n v. Hanson, 859 F.2d 313, 318 (4th Cir. 1988)