**NORTHWEST ENVIRONMENTAL DEFENSE CENTER,**
Plaintiff,

v.

**UNITED STATES ARMY CORPS OF ENGINEERS; Boeing–Agri Industrial Company; Inland Land Company, LLC; R.D. Offutt Company; Taggares Farms, Inc.; and Double T Farming, Defendants.**

No. CIV. 99–1380–HU.

United States District Court,
D. Oregon.

Sept. 8, 2000.

Thane W. Tienson, Landye Bennett Blumstein, Portland, OR, for Northwest Environmental Defense Center.

Thomas C Lee, U.S. Attorney's Office, Portland, OR, Fred Disheroon, U.S. Dept of Justice, Env. & Natural Resource Div., Washington, DC, for U.S. Army Corps of Engineers.

Thomas E Lindley, Perkins Coie, Portland, OR, for Boeing–Agri Industrial Co.

Per A Ramfjord, Stoel Rives LLP, Portland, OR, Rodney L. Brown, Gregory T.

Costello, Marten & Brown LLP, Seattle, WA, for Inland Land Co.

Thomas E. Lindley, Elizabeth Schwartz, Perkins Coie, Portland, OR, Karen M McGaffey, Perkins Coie, Seattle, WA, for RD Offutt Co.

James P Laurick, Kilmer Voorhees & Laurick PC, Portland, OR, for Taggares Farms, Inc.

ROBERT E. JONES, District Judge.

After review and absent objection, the recommended ruling is hereby approved and adopted.

## FINDINGS AND RECOMMENDATION

HUBEL, United States Magistrate Judge.

The plaintiff, Northwest Environmental Defense Center (NEDC) brought this action under the "citizen suit" provision of the Clean Water Act, 33 U.S.C. § 1365(CWA), and the Rivers and Harbors Act of 1899, 33 U.S.C. § 403(RHA), alleging that the United States Army Corps of Engineers (Corps) and Inland Land Company, R.D. Offutt Company, Taggares Farms, Inc. and Double T Farming (collectively, private defendants) violated permits issued by the Corps in 1978 and 1995. Both the Corps and the private defendants have filed motions to dismiss.

The private defendants contend that NEDC's claims fail to satisfy the threshold jurisdictional, procedural and substantive requirements of a CWA citizen suit because 1) the CWA does not authorize private actions to enforce permit conditions that are not "effluent standards or limitations;" 2) the statute of limitations bars all or part of NEDC's claims; 3) a statutory requirement of continuing violations and mootness bar some of NEDC's claims; and 4) NEDC lacks standing.

The Corps asserts that 1) there is no private right of action under the RHA; 2) the action by the Corps of which plaintiff complains was discretionary, and therefore not actionable under the citizen suit provision of the CWA; and 3) the Corps has

sovereign immunity from actions brought under the CWA. NEDC agrees that there is no private right of action under the RHA, and denies having brought this action under the RHA, so the first of these contentions is not at issue.

*Factual Background*

In 1963, the Boeing Company entered into a 77–year lease with the State of Oregon for about 100,000 acres of land in Morrow County, Oregon, near the Columbia River. Boeing originally intended to develop the area into a "space park," but ultimately decided to develop the property for irrigated agricultural production, diverting surface water from the Columbia River by constructing pumping facilities in the Willow Creek Arm of the reservoir located behind the John Day Dam.

In 1971, Boeing obtained a permit under Section 10 of the RHA from the Corps to build a pumping facility ("the 1971 permit"). Boeing built pumping and conveyance facilities and began irrigating the land.

In 1974, Boeing formed Boeing–Agri Industrial Company (BAIC), a wholly owned subsidiary, and assigned to BAIC the rights and obligations under the long-term lease with the State. In 1975, BAIC amended the 1971 permit in order to expand the Willow Creek pumping facilities. In 1978, BAIC sought again to expand the pumping facilities, and obtained another permit from the Corps to do so (the 1978 permit). The 1978 permit was issued pursuant to the Corps' authority under both the RHA and § 404 of the CWA which, since its enactment in 1972, has required permits for dredging or filling activities.

The private defendants lease farmland from BAIC. These defendants have periodically undertaken dredging activities in Willow Creek to facilitate use of the pumping facilities. In 1995, BAIC obtained a permit from the Corps authorizing annual maintenance dredging (the dredging permit). The last maintenance dredging occurred in 1999, and the dredging permit

expired under its own terms on March 31, 2000.

On September 28, 1999, NEDC filed this action, alleging three violations of the CWA:

1. Failure to comply with condition (f) of the dredging permit, which requires daily testing of settleable solid levels and the submission of the test results to the Corps.
2. Failure to complete the fish impact study required by condition (kk) of the 1978 permit.
3. Failure to use fish screens that meet NMFS or other fishery agency requirements, as required by condition (hh) of the 1978 permit.

NEDC seeks declaratory and injunctive relief, as well as civil penalties, attorney fees and costs.

### Standards

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *AlliedSignal, Inc. v. City of Phoenix,* 182 F.3d 692, 695 (9th Cir.1999). For purposes of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. *Jensen v. City of Oxnard,* 145 F.3d 1078, 1082 (9th Cir.1998).

### Discussion

The Clean Water Act establishes a comprehensive scheme to regulate "the discharge of pollutants into the navigable waters" of the United States. 33 U.S.C. § 1251(a); *Resource Inv. Inc. v. U.S. Army Corps of Eng'rs,* 151 F.3d 1162, 1165 (9th Cir.1998). Section 402 of the CWA, 33 U.S.C. § 1342, prohibits the discharge of pollutants into navigable waters without a permit issued by the EPA under the National Pollution Discharge Elimination System (NPDES). Section 404 of the CWA, 33 U.S.C. § 1344, prohibits the discharge of "dredged or fill material" into navigable waters without a permit issued by the Corps.

Congress gave the Corps the responsibility of regulating the discharge of dredged or fill material into navigable waters in recognition of the Corps' historical role under § 10 of the RHA as the permitting agency for dredge and fill activities in the nation's navigable waters. 33 U.S.C. § 1343; *Resource Inv.,* 151 F.3d at 1166.

Although primary responsibility for regulating the discharge of dredged and fill material into navigable waters lies with the Corps, Congress directed the EPA to promulgate guidelines for the Corps' consideration of dredge or fill permit applications. 33 U.S.C. § 1344(b); *Resource Inv.,* 151 F.3d at 1166. The guidelines are at 40 C.F.R. § 230.10.

*Does the CWA permit a citizen suit against the private defendants for violation of permits issued by the Corps?*

The "citizen suits" provision of the CWA, 33 U.S.C. § 1365(a), provides:

**Authorization; jurisdiction.** Except as provided in subsection (b) of this section, and section 309(g)(6) [33 U.S.C. § 1319(g)(6)], any citizen may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment of the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the par-

ties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 309(d) of this Act [33 U.S.C. § 1319(d) ].

Because this action is not one alleging violation of an order issued by the Administrator of the EPA or a state, the claims against the private defendants can only be governed by § 1365(a)(1)(A). Section 1365(a)(1)(A) authorizes suits against any person alleged to be in violation of "an effluent standard or limitation." The private defendants contend that none of the three permit violations NEDC alleges in this case falls within the statutory definition of "effluent standards or limitations."

Section 1365(f)(6) defines "effluent standard or limitation" as

1. an unlawful act under subsection (a) of § 1311;

2. an effluent limitation or other limitation under § 1311 or 1312;

3. a standard of performance under § 1316;

4. a prohibition, effluent standard or pretreatment standard under § 1317;

5. certification under § 1341;

6. a permit or condition thereof issued under § 1342, [including a requirement applicable by reason of § 1323, which governs pollution control from federal facilities and is not applicable to this case]; or

7. a regulation under section 1345(d).

At first glance, it appears that the applicable definition is at subsection (f)(6), which deals with "a permit or condition thereof." However, subsection (f)(6) refers to permits issued under § 1342, and § 1342 pertains only to NPDES permits issued by the Administrator of the EPA. The permits in this case were issued by the Corps under § 1344; permittees under § 1344 are excepted from the NPDES permit system. 33 U.S.C. § 1342(a)(1).

■ The statutory language makes the intent of Congress clear, and the court must follow it. See, e.g., *Sloan v. West*, 140 F.3d 1255, 1261 (9th Cir.1998)(If intent of Congress is clear from the face of the statutory language, court must give effect to it.) There are no implied private causes of action under the CWA; the court therefore has no authority to read into subsection (f)(6) a definition which would include permits issued by the Corps. See *Middlesex County Sewerage Authority v. National Sea Clammers*, 453 U.S. 1, 15–19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Moreover, dicta in a Ninth Circuit case suggests that § 1365(a)(1) actions are limited to permits involving NPDES and would not include § 1344 permits. In *Northwest Environmental Advocates v. City of Portland*, 56 F.3d 979, 989 n. 11 (9th Cir.1995), the court said:

> When this Court and other courts have held that citizens may not enforce water quality standards under § 505(a)(1) [33 U.S.C. § 1365(a)(1) ], *they addressed standards that were not included in a NPDES permit. Oregon Natural Resources Council v. U.S. Forest Service*, 834 F.2d 842 (9th Cir.1987)(suit to enforce water quality standards allegedly breached by nonpoint sources, which are never regulated by NPDES permits); *McClellan Ecological Seepage v. Weinberger*, 707 F.Supp. 1182, 1200 (E.D.Cal.1988)(finding no citizen suit jurisdiction existed, because "a state water quality standard can constitute an effluent standard or limitation enforceable under section 505 only if it has been incorporated into an NPDES permit"); *Montgomery Envtl. Coalition Citizens Coordinating Comm. on Friendship Heights v. Washington Suburban Sanitary Comm'n*, 607 F.2d 378, 381 (D.C.Cir.1979).

(Emphasis added). Although NEDC has alleged permit violations, it has no cause of action under § 1365(a)(1) because the permits in question were issued under § 1344, not § 1342, of the CWA.

NEDC argues that § 1365(f)(1) and (2) reference § 1344 permits. However, NEDC has not directed to the court to any authority that so interprets § 1365(f)(1) and (f)(2), and I do not find this argument persuasive. Subsection (f)(1) refers to "an unlawful act" under § 1311(a). Section 1311(a) makes unlawful the "discharge of any pollutant." NEDC has not included discharge of a pollutant in its permit violation allegations.

Subsection (f)(2) refers to effluent or other limitations under § 1311 or § 1312. But these effluent limitations are specifically applied to point sources of discharge of pollutants. See 33 U.S.C. § 1311(3). As defendants correctly point out, there is nothing in the CWA to support the idea that a dredge or pump permit is a point source permit; the inference is to the contrary, given the two separate permit schemes involved in the CWA.

Plaintiff also argues that the phrase "or other limitation under § 1311 or 1312" is a catchall provision that can be read to encompass the permit conditions at issue here. But this interpretation would make other more specific provisions superfluous, and should therefore be avoided. See *Walters v. Metropolitan Educ. Enterprises*, 519 U.S. 202, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997)(statutes must be interpreted, if possible to give each word some operative effect); *Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1066 (9th Cir.1998)("[B]ecause words can have alternative meaning depending on context, we interpret statutes, not by viewing individual words in isolation, but rather by reading the relevant statutory provisions as a whole"); *In re Rufener Construction, Inc.*, 53 F.3d 1064, 1067 (9th Cir.1995)("When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as whole.").

I conclude that the private defendants should be dismissed from this case because § 1365(a)(1) does not permit an action for violation of the terms or conditions of permits issued under 33 U.S.C. § 1344. I now turn to the question of whether NEDC can maintain an action against the Corps under § 1365(a)(2).

*Is the Corps immune from such a suit?*

The Corps asserts that it cannot be sued under § 1365(a)(2) because it has sovereign immunity. There is no Ninth Circuit authority on this issue, but the Corps cites an Eleventh Circuit case, *P.E.A.C.H. v. U.S. Army Corps of Engineers*, 87 F.3d 1242 (11th Cir.1996). The *P.E.A.C.H.* court found that subsection (a)(2) specifically refers to the Administrator of the EPA, but does not "clearly and unambiguously waive sovereign immunity in regard to the Army Corps of Engineers." 87 F.3d at 1249. Invoking the rule that the United States must expressly and unambiguously waive sovereign immunity, and that any statutory provision allowing suits against the United States must be strictly construed, the court concluded that "Congress did not intend to waive sovereign immunity in regard to suits against the Army Corps of Engineers under the Clean Water Act." *Id.* A later Eleventh Circuit case, *Hill v. Boy*, 144 F.3d 1446, 1449 n. 7 (11th Cir.1998) followed *P.E.A.C.H.* without additional discussion. The District Court in the Western District of Washington has arrived at the same result. See *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F.Supp. 692 (W.D.Wash. 1996). In that case the court noted that the CWA allows suits only against the Administrator of the EPA. 921 F.Supp. at 696. The court rejected the argument that because the Administrator has delegated certain duties to the Secretary of the Army, the Corps "stands in the shoes of the EPA," observing that the argument "ignores the rule that waivers of sovereign immunity must be construed narrowly and according to their express terms." *Id.* The court held that it was "not at liberty to rewrite the statute in accordance with extrinsic delegations of duty." *Id.*

NEDC cites a Fourth Circuit case, *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir.1988). In that case, the plaintiff brought an action against both the EPA and the Corps under § 1365(a)(2) for having failed properly to designate two tracts of land as wetlands.

█ The *Hanson* court noted that as part of the Corps' nondiscretionary duty to regulate dredged or fill material, it must make "reasoned wetlands determinations," while the EPA is "ultimately responsible for the protection of wetlands." 859 F.2d at 315–16. Because the two agencies must act in tandem, the court concluded, "Congress cannot have intended to allow citizens to challenge erroneous wetlands determinations when the EPA Administrator makes them but to prohibit such challenges when the Corps makes the determination and the EPA fails to exert its authority over the Corps' determination." *Id.* at 316. I do not find the court's reasoning in *Hanson* applicable to the facts of this case, since here the Corps and the EPA are not acting in tandem.

I therefore recommend that the private defendants' and the Corps' motions to dismiss (doc. # 30, 32) be granted.

*Scheduling*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 14, 2000. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due July 28, 2000, and the review of the Findings and Recommendation will go under advisement on that date.

June, 29, 2000.