[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-8872

_____

D. C. Docket No. 3:95-CV-37-JTC

RICHARD S. HILL;
DERRILL M. MAXWELL, et al.,

Plaintiffs-Appellants,

versus

WAYNE W. BOY, Col., District Engineer,
Savannah, U.S. Army Corps of Engineers;
JOHN H. ZIRSCHKY, Acting Assistant
Secretary of the Army (Civil Work), et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 2, 1998)

Before ANDERSON and BIRCH, Circuit Judges, and COHILL*, Senior District Judge.

ANDERSON, Circuit Judge:

_____
* Honorable Maurice B. Cohill, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

In this case, the appellants challenge the United States Army Corps of Engineers'

issuance of a section 404 permit under the Clean Water Act, 33 U.S.C. § 1344, for the

proposed construction of a reservoir and dam in Carroll County, Georgia. We affirm in

part, vacate in part, and remand. Because we conclude that the Corps of Engineers did not

adequately consider the potential adverse environmental impact of a petroleum pipeline

that crosses underneath the proposed reservoir, we vacate in part and remand to the district

court with instructions for the district court to remand the section 404 permitting decision

to the Corps of Engineers.

## I. FACTS AND PROCEDURAL HISTORY

On August 10, 1994, the United States Army Corps of Engineers ("Corps")

issued a section 404 permit under the Clean Water Act ("CWA"), 33 U.S.C. § 1344,[1] to

the Carroll County Water Authority ("Water Authority"). The section 404 permit

authorized the Water Authority to discharge 320,000 cubic yards of dredged and/or fill

material into the waters of Snake Creek and adjoining wetlands for the construction of

an earthen dam and a 650 acre reservoir.[2] The reservoir is proposed to be used as a

---

[1] Section 404 of the CWA provides that "the Secretary [of the Army] may issue permits . . . for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344 (1986).

[2] Over thirty-three acres of wetlands and three miles of the Snake Creek's channel would be impacted by the discharge of the dredged and/or fill material. The section 404 permit required that the Water Authority implement a "Wetland Replication and Restoration Plan" in which approximately 19.77 acres of wetlands would be created and approximately 37.43 acres of existing wetlands would be preserved.

public water supply and for compatible public recreational activities. In issuing the section 404 permit and approving the project,[3] the Corps prepared an Environmental Assessment ("EA") in which the Corps concluded that

> the proposed work will not have significant adverse effects on the quality of the human environment. The proposed action does not constitute a major Federal Action significantly affecting the quality of the human environment; and, therefore, does not require the preparation of a detailed statement under Section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).

In making a "finding of no significant impact" ("FONSI"), and thus deciding not to prepare an environmental impact statement ("EIS"), the Corps assumed that a liquid petroleum pipeline that crosses underneath the proposed Snake Creek reservoir would be relocated by the Water Authority.[4] In the EA for the Snake Creek project, the Corps responded to objections raised by the public, including objections raised by the plaintiffs in the instant case. The Corps stated the objections about the petroleum pipeline and the Corps' responses as follows:

---

[3] The Administrator of the Environmental Protection Agency (EPA) did not seek to overrule the Corps' issuance of the section 404 permit nor seek to enjoin the activities authorized by the permit.

[4] Although the Water Authority stated in its application for the section 404 permit that a *natural gas* pipeline crossed underneath the proposed site of the Snake Creek reservoir and that "[n]o activities that release oils or other pollutants will be permitted in or around the proposed reservoir," the Corps learned that a *petroleum* pipeline crosses underneath the site of the proposed reservoir.

(g) The application indicated that a natural gas pipeline crossed the project area, when in fact the pipeline is a liquid petroleum pipeline. The applicant has indicated that the pipeline would be relocated. . . .

(p)(4) The application did not contain a contingency plan for actions to be taken in the event of a spill from the petroleum line currently located within the project area. This plan is not necessary since the line would be relocated.

(public objections underlined). In the appendix to the EA, entitled "Evaluation For Compliance With 404(B)(1) Guidelines," the Corps stated that "there is a liquid petroleum transfer line passing through the project area. There is no known documentation of any accidental spills from this pipeline. The applicant would be required to relocate this line outside the limits of the project area prior to reservoir impoundment." However, the relocation of the petroleum pipeline was not made a condition of the Water Authority's section 404 permit and the administrative record before the Corps did not indicate that any specific plan of relocation existed.

In May 1995, the appellants, a number of property owners whose homes are located below the proposed dam (hereinafter "the property owners"), filed a four-count complaint against the EPA and the Corps. In Count I, the property owners challenged the Corps' issuance of a section 404 permit to the Water Authority, alleging that the Corps failed to clearly demonstrate that the proposed Snake Creek reservoir was the least environmentally damaging practicable alternative. In Count II, the property owners alleged that the EPA should have vetoed the Corps' issuance of the section 404

4

permit under section 309(c) of the CWA, 33 U.S.C. § 1344(c).[5]  In the third count of

their complaint, the property owners alleged that the Corps failed to prepare an EIS as

required under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §

4332(2)(C).  Finally, in Count IV, the property owners alleged that the Corps' issuance

of the section 404 permit was arbitrary, capricious, and otherwise not in accordance

with the CWA or its implementing regulations, in violation of the Administrative

Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).[6]

In an August 5, 1996 order, the district court granted the defendants' motion for

partial summary judgment and dismissed the property owners' claims (Counts I and II)

brought under the citizen suit provision of the Clean Water Act, 33 U.S.C. §

1365(a)(2).[7]  In the same order, the district court also entered a protective order

_____

[5]  Section 1344(c) provides that the EPA Administrator "is authorized to prohibit the specification . . . of any defined area as a disposal site" and "is authorized to deny or restrict the use of any defined area for specification . . . as a disposal site. . . ."  33 U.S.C. § 1344(c) (1986).  This provision gives the EPA authority to veto the Corps' issuance of a section 404 permit.

[6]  Section 706(2)(A) of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (1996).

[7]  Section 1365(a)(2) provides that "any citizen may commence a civil action on his own behalf . . . against the Administrator [of the EPA] where there is alleged failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."  33 U.S.C. § 1365(a)(2) (1986).
In dismissing Counts I and II of the property owners' complaint, the

prohibiting the property owners from engaging in any discovery and limiting the court's review on Counts III and IV to the administrative record. Subsequently, in a January 30, 1997, order, the district court granted summary judgment to the defendants on Counts III and IV of the property owners' complaint and denied the property owners' motion to remand the section 404 permitting decision to the Corps. The property owners appeal.

## II. DISCUSSION

The "object of NEPA is to require federal agencies to consider environmental values when making decisions [and] [t]he initial responsibility of the federal agency is to determine the extent of the environmental impact." C.A.R.E. Now, Inc. v. Federal Aviation Admin., 844 F.2d 1569, 1572 (11th Cir. 1988). Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), requires a federal agency to prepare an EIS when a major

---

district court relied on Preserve Endangered Areas of Cobb's History, Inc. [P.E.A.C.H.] v. United States Army Corps of Engineers, 87 F.3d 1242, 1249-50 (11th Cir. 1996). In P.E.A.C.H., as in the instant case, the plaintiffs brought a CWA citizen suit under § 1365(a)(2) against the Army Corps of Engineers and against the EPA for failing to use its authority to veto the Corps' issuance of a section 404 permit. The court in P.E.A.C.H. concluded that § 1365(a)(2) did not authorize citizen suits against the Corps and dismissed the plaintiffs' § 1365(a)(2) action against the EPA because the court concluded that the EPA's authority to veto a section 404 permit is discretionary and that § 1365(a)(2) only provides citizens with a cause of action against the EPA for performance of "an act or duty . . . which is not discretionary." Id. at 1249-50. Based on the holding of P.E.A.C.H., we conclude that the district court properly granted summary judgment against the property owners on Counts I and II.

federal action significantly affects the quality of the human environment.[8]  In order to assist federal agencies in determining whether they must prepare an EIS, the federal Council on Environmental Quality ("CEQ") has issued regulations which provide guidance to the agencies.  See Sabine River Auth. v. United States Dep't of Interior, 951 F.2d 669, 677 (5th Cir. 1992) (citing Sierra Club v. Marsh, 769 F.2d 868, 870 (1st Cir. 1985)).  The CEQ regulations direct federal agencies to prepare an EA in order to determine whether the environmental effects of a proposed project are "significant." 40 C.F.R. §§ 1501.3, 1501.4, 1508.9, 1508.27 (1998).  Under these regulations, the purpose of an EA is to "[b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact."  40 C.F.R. § 1508.9(a)(1) (1998).  Thus, an agency will reach one

---

[8]  Section 102(2)(C) of NEPA provides that
(2) all agencies of the Federal Government shall . . .
     (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on–
         (i) the environmental impact of the proposed action,
         (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
         (iii) alternatives to the proposed action,
         (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
         (v) any irreversible and irretrievable commitments of the resources which would be involved in the proposed action should it be implemented.
42 U.S.C. § 4332(2)(C) (1994).

of two conclusions in an EA: "either that the project requires the preparation of an EIS to detail its environmental impact, or that the project will have no significant impact . . . necessitating no further study of the environmental consequences which would ordinarily be explored through an EIS." Sabine River Auth., 951 F.2d at 677.

We review an agency's decision not to prepare an EIS under an "arbitrary and capricious" standard of review. See Preserve Endangered Areas of Cobb's History, Inc. [P.E.A.C.H.] v. United States Army Corps of Engineers, 87 F.3d 1242, 1248 (11th Cir. 1996) (applying an arbitrary and capricious standard of review to Corps' decision not to prepare an EIS); North Buckhead Civic Ass'n v. Skinner, 903 F.2d 1533, 1538 (11th Cir. 1990) (adopting "the arbitrary and capricious standard when reviewing agency action in NEPA cases).[9] The District of Columbia Circuit has listed four criteria to be considered in determining whether an agency's decision not to prepare an EIS is arbitrary and capricious:

> First, the agency must have accurately identified the relevant environmental concern. Second, once the agency has identified the problem it must have taken a "hard look" at the problem in preparing the EA. Third, if a finding of no significant impact is made, the agency must be able to make a convincing case for its finding. Last, if the agency does find an impact of true significance, preparation of an EIS can be avoided only if the agency finds that changes or safeguards in the project sufficiently reduce the impact to a minimum.

---

[9] On the authority of P.E.A.C.H. and North Buckhead, we reject the property owners' argument that we should use a "reasonableness" standard of review rather than an arbitrary and capricious standard of review.

8

Coalition on Sensible Transp., Inc. v. Dole, 826 F.2d 60, 66-67 (D.C. Cir. 1987)

(quoting Sierra Club v. United States Dep't of Transp., 753 F.2d 120, 127 (D.C. Cir.

1985)).

In challenging the Corps' decision not to prepare an EIS and arguing that the

Corps' EA was deficient, the property owners primarily challenge the Corps'

assumption that the petroleum pipeline, which crosses underneath the proposed Snake

Creek reservoir, would be relocated by the Water Authority. The property owners

contend that the administrative record is devoid of any evidence that the Water

Authority actually plans to relocate the pipeline.[10] Furthermore, the property owners

have proffered substantial evidence suggesting that the Water Authority has decided

not to relocate the pipeline.[11]

---

[10] The property owners contend that no plan has ever existed to reroute the petroleum pipeline. They allege that there are no easements for the purported rerouting of the pipeline, no documents indicating where the pipeline allegedly is to be rerouted, and no contract between the Water Authority and the owner of the pipeline to relocate the pipeline.

[11] The evidence proffered by the property owners suggests that, after a meeting with the owner of the petroleum pipeline, the Water Authority decided not to relocate the pipeline. The evidence also suggests that the Water Authority made this decision prior to the Corps' issuance of the permit. Relying on Florida Power & Light Company v. Lorion, 470 U.S. 729, 105 S. Ct. 1598 (1985), the Corps argues that we should not consider this evidence because a reviewing court is limited to the administrative record and should not consider new evidence raised for the first time in the district court. In discussing the "fundamental principles of judicial review of agency action," the Court in Florida Power stated that "'[t]he focal point for judicial review should be the administrative record already in existence.'" Id. at 1607 (quoting Camp v. Pitts,

9

We conclude that the current record does not support the Corps' assumption that the petroleum pipeline will be relocated. In determining whether a remand is necessary, we address the question of whether the issuance of the Corps' EA would be arbitrary and capricious based on the opposite assumption that the pipeline will not be removed.[12] Assuming that the pipeline will not be removed, we conclude that the Corps' finding of no significant impact and resulting decision not to prepare an EIS was arbitrary and capricious. The first three criteria listed in Coalition on Sensible Transportation require an agency deciding not to prepare an EIS to identify the relevant environmental concern, take a "hard look" at the problem in preparing the EA, and make a convincing case in support of a finding of no significant impact. Coalition on Sensible Transp., 826 F.2d at 66-67. We conclude that the Corps failed to satisfy these three criteria in assessing the potential adverse environmental impacts resulting from leaving the petroleum pipeline underneath the proposed reservoir. In finding that the

411 U.S. 138, 142, 93 S. Ct. 1241, 1244 (1973)). However, the Court also noted that a reviewing court may remand a case to the agency for additional investigation or explanation "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it." Id. at 1607. Because the record before the Corps does not support its assumption that the pipeline will be relocated, and because the Corps does not contest the truth of the property owners' assertion that there is no present intention on the part of the Water Authority to relocate the pipeline, we remand this issue, see infra, without need to address when such newly proffered evidence can appropriately be considered.

[12] We make this assumption in order to test whether a remand is necessary.

10

Snake Creek project "will not have significant adverse impacts on the quality of the human environment," the Corps explicitly assumed that *the pipeline would be removed*. Thus, it is clear that the Corps did not identify the environmental concerns related to *the pipeline remaining underneath the proposed reservoir*, did not take a "hard look" at the potential adverse environmental consequences of such a pipeline,[13] and did not make a convincing case for its finding of no significant impact from such a pipeline. Therefore, we conclude that the Corps violated NEPA by failing to adequately consider all relevant environmental factors prior to making its finding of no significant impact.

Because we conclude that the record does not support the Corps' assumption that the pipeline will be relocated and because we conclude that the Corps' failed to adequately consider the environment impact of the pipeline remaining underneath the proposed reservoir, we hold that a remand is necessary. On remand, the Corps should consider whether the petroleum pipeline will remain underneath the proposed Snake Creek reservoir and, if it will remain, whether the presence of such a pipeline necessitates the preparation of an EIS for the Snake Creek project.[14]

---

[13] In response to a public comment expressing concern that the Water Authority's section 404 permit application did not contain a contingency plan in the event of an oil spill or leak from the pipeline in the project area, the Court stated that a "[contingency] plan is not necessary since the line would be relocated."

[14] On the other hand, if the Corps determines on remand that the pipeline will be relocated, none of the other arguments asserted on appeal by the property owners persuade us that the Corps' issuance of the EA was arbitrary or capricious. We also agree with the district court's reasoning in rejecting the

### III. CONCLUSION

Based on the foregoing, we affirm the grant of summary judgment as to Counts I and II.[15] However, with respect to Counts III and IV, we vacate the district court's grant of summary judgment in favor of the Corps and remand the case to the district court with instructions for the district court to remand the section 404 permitting decision to the Army Corps of Engineers for consideration of any change in the purported plan to relocate the petroleum pipeline and, if the pipeline is not to be relocated, for consideration of whether the presence of the pipeline underneath the reservoir would have a significant adverse impact on the quality of the environment.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

---

property owners' argument that the entire administrative record was not forwarded to the district court. See District Court Order, at 5 (January 30, 1997). Finally, in light of our decision to remand the section 404 permitting decision to the Corps for consideration of any change in the alleged plan to relocate the petroleum pipeline and in light of the fact that the only significant newly proffered evidence relates to that issue, we conclude that the property owners' appeal of the district court's order prohibiting discovery and limiting review to the administrative record is moot.

[15] See supra note 7.